## TEXAS & N. O. R. CO. v. LOUISIANA PUBLIC SERVICE COMMISSION et al.
### and five other cases.
### Nos. 272–277.

District Court, E. D. Louisiana, Baton Rouge Division.

Jan. 10, 1933.

Harry McCall, of New Orleans, La., for Texas & N. O. R. Co.

Selim B. Lemle, of New Orleans, La., for Yazoo & M. V. R. Co.

Esmond Phelps, of New Orleans, La., for Texas & P. Ry. Co.

Burford & White, of Shreveport, La., and Esmond Phelps, of New Orleans, La., for Louisiana & A. Ry. Co.

H. Payne Breazcale, of Baton Rouge, La., for New Orleans, T. & M. Ry. and New Iberia & N. R. Co.

Wylie M. Barrow, Sp. Asst. to Atty. Gen. of Louisiana, for defendants.

Before FOSTER, Circuit Judge, and BORAH and COX, District Judges.

BORAH, District Judge.

These suits, which were consolidated for trial, are brought by the carriers operating in the sugar region of this state to annul and enjoin the enforcement of an order of the Louisiana Public Service Commission requiring the carriers to reduce rates on sugar cane in car loads between points in the state of Louisiana. The effect of the order so made, if enforced, will be to reduce the existing rates on sugar cane about 15 per cent. and it is estimated that plaintiffs' receipts would have been reduced $101,680.70 had the order been applied to the 1931-1932 crop movement.

Plaintiffs attack the order on the grounds (1) that the reduction ordered is wholly unjustified, unwarranted, and unsupported by any evidence and (2) that the rates prescribed, if carried into effect, would be unreasonable and confiscatory.

The record before us shows that the commission's order reducing the rate per ton for the transportation of sugar cane can be justified only by a comparison of the existing rates in other states on sugar beets. While it is true that the rate on sugar beets is in some instances lower than the rate on sugar cane for a haul of the same distance, the one has no appreciable bearing on the other in the absence of the affirmative showing that the conditions surrounding the transportation of these commodities are the same. Not only has such a showing not been made but as a matter of fact the record here demonstrates that the carriers derived more revenue per car mile

from the movement of sugar beets than they derived from the movement of sugar cane for a similar distance, because the former, being less bulky, is moved in car load shipments averaging about 80,000 pounds as contradistinguished from sugar cane which moves in car load shipments averaging approximately 52,000 pounds. With these observations we pass on to a consideration of plaintiffs' second ground of attack which entails an analysis of the cost statements filed by the carriers in these proceedings.

Taking the case of the Texas & New Orleans Railroad Company as typical of the other plaintiffs, the evidence is uncontradicted that this plaintiff derived a revenue of $152,078.00 from its sugar cane operations during the 1931-1932 season. Its out-of-pocket costs in connection with this traffic, without taking into consideration any allowance for taxes, return on investment, or general overhead expenses, amounted to $151,007.78. It further appears that had the scale of rates prescribed by the order that was issued in Case No. 1942 of the docket of the commission been applied to the 1931-1932 crop movement, the revenues of this plaintiff would have been reduced by $35,607.45, and a loss of $34,537.23 would have been sustained. Included in the sum total of out-of-pocket costs are two items aggregating $87,227 which are based on a per diem charge of $1 per day for the freight cars used in special and general train service. The propriety of this charge which exceeds one-half of the total cost of performing the cane service is challenged on the ground that same does not represent an item of expense and it is around this contention that most of the controversy in this case is centered.

It is clear that the amount charged for the use of freight cars is intended to represent the cost of furnishing the equipment for this service, and that the figure was arrived at on the basis of charging $1 per car for each day that a car was actually engaged in the cane service. The carriers claim that the per diem charge of $1 per day is justified because it is the regular and recognized rate charged among carriers for the use of foreign equipment and that this would seem to be a more satisfactory method of arriving at a proper figure than it would be to take all items of cost attributable to the use of equipment and by endeavoring in that way to arrive at an average per day unit of equipment. Furthermore, it is urged that the uncontroverted affidavit of Gormley discloses how this dollar per day is made up in actual expense. The affi-

624

davit in question shows that the American Railway Association made two studies of the value of the use of freight cars extending over the entire United States, and that in 1931, which is the latest year for which the figures are available, they developed the following factors:

| | | |
|---|---|---|
| Maintenance | 39.61 | cents |
| Depreciation | 16.98 | " |
| Taxes | 3.95 | " |
| Interest on investment | 24.66 | " |
| Other items | 6.50 | " |
| Total | 91.70 | cents |

An examination of the cost statements filed by the carriers reveal that they have not included any items for maintenance, depreciation, taxes, interest on investment, or any other allowances on the freight cars used in moving the sugar cane traffic, but in lieu thereof have made the per diem charge of $1 per day which includes these items which constitute a definite average cost per day for having and maintaining equipment. This charge, however, cannot be justified in its entirety because, as the analysis above shows, only 91.70 cents of the dollar represents actual expense. The amount charged by the Texas & New Orleans Railroad Company for the use of freight cars is therefore excessive, according to our calculations, to the extent of $7,239.84. It also appears that this plaintiff, in computing its statement, did not take into consideration that there had been a 10 per cent. reduction in wages; therefore the item "wages of employees," as same appears on Exhibit No. 1, is subject to a deduction of $2,208.97. These changes in the figures do not affect the legal result though they do show that plaintiff's claimed out-of-pocket costs of $151,007.78 is excessive to the extent of $9,448.81.

Thus far consideration has only been given to the disputed items which make up the out-of-pocket costs. It is obvious that in any proper accounting system allowance must be made for overhead, taxes, and return on investment. This phase of the matter is covered in Plaintiff's Exhibit "Druschke 4," which is a statement showing the general overhead expenses, ad valorem taxes, and return on investment in road of the Texas & New Orleans Railroad Company for the year 1931, and the proportion thereof properly assignable to the sugar cane traffic. It is significant to observe from this statement that, while the total amount of ad valorem taxes on all the property of the Texas & New Orleans Railroad Company for the year 1931

was $2,856,507.79, this sum does not include the taxes on equipment for the reason that the dollar per diem charged for use of cars included an allowance for taxes. The net result of this exhibit is to show that the total of freight proportion of general overhead expenses, ad valorem taxes, and return on investment assignable to cane traffic during the season 1931–1932 amounted to $61,695.28. By adding the aforesaid overhead items to the direct cost of the cane service the net loss of this plaintiff for the same season was $51,176.25. If the proposed rates had been applied to the 1931–1932 movement there would have been a loss of $86,783.70 to the Texas & New Orleans Railroad Company on the sugar cane traffic of that season. Such being the situation with reference to this plaintiff and other carriers, we are of the opinion that the rates prescribed by the Louisiana commission, if put into effect, would be confiscatory and deprive the plaintiffs of their property without due process of law.

An interlocutory injunction will accordingly be granted as prayed for.